**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wanda Michelle Sergeon, | No. CV-20-00164-PHX-ESW |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Wanda Michelle Sergeon's ("Plaintiff") appeal of the Social Security Administration's ("Social Security") denial of her application for disability insurance benefits. The Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. § 405(g). Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing. Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction. (Doc. 10).

The Court has reviewed the Administrative Record ("A.R.") and the parties' briefing (Docs. 13, 14, 18). For the reasons explained in Section II below, the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and is free of harmful legal error. The decision is therefore affirmed.

# I. LEGAL STANDARDS

## A.  Disability Analysis:  Five-Step Evaluation

The Social Security Act (the "Act") provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  To be eligible for benefits based on an alleged disability, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity.   42 U.S.C. § 423(d)(1)(A).   The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months. *Id*.

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps.  20 C.F.R. § 404.1520(a).  The claimant has the burden of proof regarding the first four steps:[1]

> **Step One**:  Is the claimant engaged in "substantial gainful activity"?  If so, the analysis ends and disability benefits are denied.  Otherwise, the ALJ proceeds to Step Two.
>
> **Step Two:** Does the claimant have a medically severe impairment or combination of impairments?   A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).   If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step.  Otherwise, the ALJ proceeds to Step Three.
>
> **Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity? 20 C.F.R. § 404.1520(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.
>
> **Step Four:**  Does the impairment prevent the claimant from

---

[1] *Parra v. Astrue*, 481 F.3d 742,746 (9th Cir. 2007).

performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. § 404.1520(f). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[2]

> **Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. § 404.1520(g). Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id.*

### B. Standard of Review Applicable to ALJ's Determination

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must

---

[2] *Parra*, 481 F.3d at 746.

1  be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  This is because the
2  ALJ, not the Court, is responsible for resolving conflicts and ambiguities in the evidence
3  and determining credibility.  *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53
4  F.3d 1035, 1039 (9th Cir. 1995).

5       The Court also considers the harmless error doctrine when reviewing an ALJ's
6  decision.  This doctrine provides that an ALJ's decision need not be remanded or reversed
7  if it is clear from the record that the error is "inconsequential to the ultimate nondisability
8  determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations
9  omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains
10 substantial evidence supporting the ALJ's decision and the error "does not negate the
11 validity of the ALJ's ultimate conclusion") (citations omitted).

## II.  DISCUSSION

### A.  Procedural Background

14      Plaintiff, who was born in 1963, has worked as a computer programmer.  (A.R. 55,
15 61).  In April 2016, Plaintiff applied for disability insurance benefits.  (A.R. 155-59).
16 Plaintiff's applications alleged that on April 7, 2016, Plaintiff became unable to work due
17 to fibromyalgia, Sjogren's syndrome, and osteoarthritis.  (A.R. 61-62).  Social Security
18 denied the application, and upon Plaintiff's request for reconsideration, affirmed the denial
19 of benefits.  (A.R. 87-90, 98-102).  Plaintiff sought further review by an ALJ, who
20 conducted a hearing in June 2018.  (A.R. 29-60).

21      In his October 24, 2018 decision, the ALJ found that Plaintiff is not disabled within
22 the meaning of the Social Security Act.  (A.R. 15-23).  The Appeals Council denied
23 Plaintiff's request for review, making the ALJ's decision the final decision of the Social
24 Security Commissioner.  (A.R. 1-6).  On January 21, 2020, Plaintiff filed a Complaint
25 (Doc. 1) requesting judicial review and reversal of the ALJ's decision.

### B.  The ALJ's Application of the Five-Step Disability Analysis

#### 1.  Step One: Engagement in "Substantial Gainful Activity"

28 The ALJ determined that Plaintiff has not engaged in substantial gainful activity

- 4 -

since April 7, 2016 (the alleged disability onset date).  (A.R. 17).  Neither party disputes this determination.

### 2. Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that Plaintiff has the following severe impairments: right shoulder osteoarthritis, bilateral knee osteoarthritis, right hip osteoarthritis, and fibromyalgia.  (A.R. 18).  The ALJ's step two determination is undisputed.

### 3. Step Three: Presence of Listed Impairment(s)

The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations.  (A.R. 18).  Neither party disputes the ALJ's determination at this step.

### 4. Step Four:  Capacity to Perform Past Relevant Work

The ALJ found that Plaintiff has retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), subject to the following additional limitations:

> [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently.  She can stand and walk for 6 hours in an 8-hour day.  She can sit for 6 hours in an 8-hour day.  The claimant can occasionally climb, balance, stoop, kneel, crouch and crawl.  The claimant can occasionally reach overhead with the right upper extremity.  She must avoid concentrated exposure to extreme cold and vibrations.

(A.R. 19).  After considering Plaintiff's RFC, the ALJ determined that Plaintiff is able to perform her past relevant work as a computer programmer.  (A.R. 22).  Plaintiff disputes this determination, asserting that the ALJ improperly discounted her symptom testimony and the opinions of treating providers.

### 5. Step Five: Capacity to Perform Other Work

The ALJ did not make alternative findings at step five.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C. The ALJ Provided Specific, Clear, and Convincing Reasons for Discounting Plaintiff's Testimony

When evaluating the credibility of a plaintiff's testimony regarding subjective pain or symptoms, the ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The plaintiff does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms. Rather, a plaintiff must only show that it could have caused some degree of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If a plaintiff meets the first step, and there is no affirmative evidence of malingering, the ALJ can only reject a plaintiff's testimony about the severity of his or her symptoms by offering specific, clear, and convincing reasons. *Lingenfelter*, 504 F.3d at 1036. The ALJ cannot rely on general findings. The ALJ must identify specifically what testimony is not credible and what evidence undermines the plaintiff's complaints. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). In weighing a plaintiff's credibility, the ALJ can consider many factors including: a plaintiff's reputation for truthfulness, prior inconsistent statements concerning the symptoms, unexplained or inadequately explained failure to seek treatment, and the plaintiff's daily activities. *Smolen*, 80 F.3d at 1284; *see also* 20 C.F.R. § 404.1529(c)(4) (Social Security must consider whether there are conflicts between a claimant's statements and the rest of the evidence).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (A.R. 20). As discussed below, the ALJ did not commit harmful error in discounting Plaintiff's symptom testimony.

1     The ALJ gave several reasons for finding Plaintiff's testimony not credible. The
2 ALJ first explained that Plaintiff's subjective complaints are not supported by and are
3 inconsistent with the medical evidence.  (A.R. 20).  As referenced in the ALJ's decision,
4 treatments notes reflect mild limitations in Plaintiff's examinations.  (*Id.*).  The ALJ also
5 referenced records showing that trigger point injections provided relief and decreased the
6 severity of Plaintiff's pain by 20%-70%.  (*Id.*).

7     After reviewing the record, the Court finds that the ALJ reasonably concluded that
8 there is a lack of objective evidence in the record supporting Plaintiff's claimed limitations.
9 Further, the ALJ did not rely solely on the lack of supporting medical evidence in making
10 his credibility determination.  As discussed below, the ALJ gave other clear and convincing
11 reasons to discount Plaintiff's credibility concerning the severity and limiting effects of her
12 pain.  Thus, the ALJ properly considered the lack of objective medical evidence supporting
13 Plaintiff's claimed limitations as one of the factors in weighing Plaintiff's
14 credibility.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective
15 pain testimony cannot be rejected on the sole ground that it is not fully corroborated by
16 objective medical evidence, the evidence is still a relevant factor in determining the
17 severity of the claimant's pain and its disabling effects.") (citing 20 C.F.R. §
18 404.1529(c)(2)).

19     The ALJ also observed that the record reflects that Plaintiff received conservative
20 treatment.  (A.R. 21).  Routine, conservative treatment can be sufficient to discount a
21 claimant's subjective testimony regarding the limitations caused by an impairment. *Parra*
22 *v. Astrue,* 481 F.3d 742, 751 (9th Cir .2007) ("[E]vidence of 'conservative treatment' is
23 sufficient     to     discount     a     claimant's testimony regarding     severity     of     an
24 impairment."); *Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir .1999) (rejecting subjective
25 pain complaints where claimant's "claim that she experienced pain approaching the highest
26 level imaginable was inconsistent with the 'minimal, conservative treatment' that she
27 received"); *Tommasetti*, 533 F.3d at 1039-40 (an ALJ may infer that pain is not disabling
28 if a claimant seeks only minimal conservative treatment).

1    As another reason for discounting Plaintiff's symptom testimony, the ALJ stated
2 that Plaintiff's allegations are inconsistent with her level of daily activity.  (A.R. 21).  Daily
3 living activities may provide a basis for discounting subjective symptoms if the plaintiff's
4 activities either contradict his or her testimony or meet the threshold for transferable work
5 skills.  *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012), *superseded by*
6 *regulation on other grounds*.  A claimant, however, need not be utterly incapacitated to
7 receive disability benefits, and completion of certain routine activities is insufficient to
8 discount subjective symptom testimony.  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.
9 2001).

10    In his decision, the ALJ recounts that Plaintiff testified that she "takes weekly walks
11 at the park for ½ hour, visits the steam room at her gym, is able to drive and is able to
12 complete chores.   Additionally, the claimant also testified she walks door to door
13 discussing the Bible with others, as she is a Jehovah's Witness."  (A.R. 21).  The ALJ's
14 decision cites records in which Plaintiff reported that she went on a 14-mile bike ride during
15 the relevant period and can use stairs with minimal pain.  (A.R. 21, 732).  The Court finds
16 that substantial evidence in the record supports the ALJ's conclusion that Plaintiff's daily
17 activities are inconsistent with her allegations.  The ALJ did not err in discounting her
18 symptom testimony on that basis.  *See Tommasetti*, 533 F.3d at 1039 ("[T]he ALJ doubted
19 Tommasetti's testimony about the extent of his pain and limitations based on his ability to
20 travel to Venezuela for an extended time to care for an ailing sister.  The ALJ could
21 properly infer from this fact that Tommasetti was not as physically limited as he purported
22 to be."); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of
23 disability benefits where claimant could "take care of her personal needs, prepare easy
24 meals, do light housework, and shop for some groceries"); *see also Molina,* 674 F.3d at
25 1113 ("Even where [daily] activities suggest some difficulty functioning, they may be
26 grounds for discrediting the claimant's testimony to the extent that they contradict claims
27 of a totally debilitating impairment.").

28    It is not the Court's role to second guess an ALJ's decision to disbelieve a Plaintiff's

allegations. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ."). Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *Morgan*, 169 F.3d at 599. The Court finds that the reasons provided by the ALJ for discrediting Plaintiff's testimony are specific, clear, convincing, and are supported by substantial evidence in the record. The Court therefore finds that the ALJ did not err in discrediting Plaintiff's symptom testimony.

### D. The ALJ Provided Valid Reasons for Discounting the Opinions of Arturo Castro, D.O.

In weighing medical source opinions in Social Security cases, there are three categories of physicians: (i) treating physicians, who actually treat the claimant; (ii) examining physicians, who examine but do not treat the claimant; and (iii) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must provide clear and convincing reasons that are supported by substantial evidence for rejecting the uncontradicted opinion of a treating or examining doctor. *Id.* at 830-31; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ cannot reject a treating or examining physician's opinion in favor of another physician's opinion without first providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss*, 427 F.3d at 1216; 20 C.F.R. § 404.1527(c)(4) (an ALJ must consider whether an opinion is consistent with the record as a whole); *see also Batson*, 359 F.3d at 1195; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tommasetti*, 533 F.3d at 1041 (finding it not improper for an ALJ to reject a treating physician's opinion that is inconsistent with the record).

Arturo Castro, D.O., Plaintiff's treating sleep specialist, completed a Fatigue Residual Functional Capacity Questionnaire. (A.R. 770). Dr. Castro stated that Plaintiff suffers from "moderately severe" fatigue, which is sufficiently severe enough to "constantly" interfere with attention and concentration. (*Id.*). Dr. Castro also stated that Plaintiff frequently experiences "deficiencies of concentration, persistence or pace

resulting in failure to complete tasks in a timely manner" and must nap during the day. (*Id.*).  Finally, Dr. Castro opined that Plaintiff is unable to sustain fulltime work.  (*Id.*).

The ALJ gave little weight to Dr. Castro's opinions, explaining that Dr. Castro's examination notes do not mention fatigue or Plaintiff's inability to work.  (A.R. 21).  The ALJ also stated that Dr. Castro's "physical examinations show normal findings of [Plaintiff's] appearance, her neck, respiratory and cardio findings were normal, and her neurological findings were oriented to person, place and time (Exhibit 13F/3, 7-8, 17F/3, 8)." (*Id.*).  The ALJ also observed that Dr. Castro's treatment records indicate that he was treating Plaintiff for insomnia, which was well-controlled with Ambien.  (*Id.*).  Finally, the ALJ observed that Dr. Castro's opinion is based mostly on Plaintiff's self-report.  (*Id.*).

The ALJ reasonably concluded that Dr. Castro's opinions are not supported by his treatment notes.  Dr. Castro's treatment records reveal relatively mild limitations that were well-treated with medication.  (A.R. 720-29, 783, 786, 788).  Dr. Castro found that Plaintiff slept reasonably well on melatonin and Ambien.  (A.R. 783). Further, he found that a sleep study showed no sleep apnea, no sleep walking, and normal REM sleep.  (A.R. 788).  The Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for assigning little weight to Dr. Castro's opinions.

### E.  The ALJ Provided Germane Reasons Supported by Substantial Evidence for Rejecting the Opinions of Plaintiff's Treating Physical Therapists

A source that is not an acceptable medical source is considered to be an "other source."  20 CFR 404.1513(d).  "Other sources" include nurse practitioners, therapists, and lay witnesses.  20 CFR § 404.1513.  Information from these "other sources" must still be considered even though the information cannot establish the existence of a medically determinable impairment.  *Id.*  An other source's opinion can be rejected as long as the ALJ provides "germane" reasons, such as finding that the opinion is inconsistent with medical evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

On May 9, 2018, Plaintiff's two physical therapists, Kayla Sibbaluca and Jennifer

1  Larson, DPT[3] completed a Pain Functional Capacity Questionnaire.  (A.R. 793-94).  Ms.

2  Sibbaluca and Dr. Larson opined that Plaintiff has "moderately severe" pain that is "often"

3  sufficiently severe to interfere with attention and concentration.  (A.R. 793).

4      Ms. Sibbaluca and Dr. Larson also completed a Medical Assessment of Ability to

5  Do Work Related Physical Activities.  (A.R. 795-97).  The Medical Assessment states that

6  Plaintiff has been diagnosed with arthritis in both shoulders, a bone spur in her right

7  shoulder, bone spur in her right knee, and iliotibial band syndrome in her right knee.  (A.R.

8  795).  Ms. Sibbaluca and Dr. Larson opined that Plaintiff has a number of limitations,

9  including that Plaintiff can occasionally and frequently lift and/or carry fifteen pounds on

10  her right side, can stand and/or walk for less than two hours in an eight hour work day, can

11  sit for less than six hours in an eight hour work day, and must alternate between sitting

12  every forty-five minutes.  (*Id.*).

13     The ALJ afforded Ms. Sibbaluca and Dr. Larson's opinions little weight, explaining

14  that "they are inconsistent with the general treatment record" and are inconsistent with

15  Plaintiff's "statements that she goes to the gym to exercise her knee and is able to go on

16  long bike rides[.]"  (A.R. 22).  Reading the ALJ's opinion as a cohesive whole, the Court

17  may reasonably infer the medical evidence that the ALJ relied on in drawing this

18  conclusion.  *See Magallanes*, 881 F.2d at 755 (courts may draw specific and legitimate

19  inferences from the ALJ's opinion).  The Court finds that the ALJ provided germane reason

20  supported by substantial evidence in the record for rejecting the Ms. Sibbaluca and Dr.

21

22     [3] The record indicates that Jennifer Larson is a Doctor of Physical Therapy.  (A.R.

23  794).  However, such a position is not an "acceptable medical source" as defined by the
   Social Security regulations.  *See Austin v. Colvin*, No. 1:15-CV-00015-REB, 2017 WL

24  1201757, at *4 (D. Idaho Mar. 31, 2017) ("[A]lthough Dr. Wright is referred to as

25  a Doctor of Physical Therapy, such a position is not an "acceptable medical source" as
   defined by the Social Security regulations.").  Plaintiff concedes that Dr. Larson is

26  considered an "other source" under the Social Security regulations.  (Doc. 13 at 20-21).

27

28

Larson's opinions.

### III. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** affirming the decision of the Commissioner of Social Security.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly.

Dated this 30th day of September, 2020.

_____
Honorable Eileen S. Willett
United States Magistrate Judge